**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ROGER F. SLADEK,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWEST AIRLINES, INC.,<br><br>Defendant. | Civil No. 01-70 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

David R. Forro, CALDECOTT WHEELER & SEARLES, P.L.C., 10 South Fifth Street, Suite 900, Minneapolis, MN, 55402, for plaintiff.

Timothy R. Thornton and Gregory J. Stenmoe, BRIGGS AND MORGAN, P.A., 2400 IDS Center, 80 South Eight Street, Minneapolis, MN, 55402, for defendant.

Plaintiff brings this action pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, to vacate an arbitration award upholding plaintiff's discharge from defendant Northwest Airlines. This matter is before the Court on defendant's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court grants defendant's motion.

FILED SEP 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

## BACKGROUND

Plaintiff was a mechanic for defendant for approximately 15 years when he was discharged from his employment on April 29, 1998. The events giving rise to plaintiff's termination begin on April 19, 1998. On that day, plaintiff claims that he arranged to remove a tool box from defendant's property through his supervisor. Another mechanic and co-worker, Guy Mueller ("Mueller"), observed what he believed to be suspicious activity by plaintiff while he was in the process of removing the toolbox from the building in which he worked. Mueller reported the incident to management. On April 21 and 22, 1998, defendant conducted an investigation into the report using its Q&A method of interrogation. From this investigation, defendant concluded that plaintiff had been attempting to remove a toolbox from defendant's property without authorization and provided false and misleading information during the company's investigation. On April 29, 1998, defendant issued plaintiff a letter of termination and stated the two grounds upon which plaintiff was being discharged:

> 1) Your violation of Rules 1, 9, and 25(a) of the Rules of Conduct for Employees of Northwest Airlines in that on April 19, 1998 you attempted to remove a toolbox from Northwest property without authorization.
>
> 2) Your violation of Rules 1, 9, and 10 of the Rules of Conduct for Employees of Northwest Airlines in that you provided false and/or misleading information during your April 21, & 22, 1998 Q&A's.
>
> Each of the above, standing alone, justifies your immediate discharge.

Complaint, Exh. 1. On May 4, 1998, plaintiff's union, the International Association of Machinists and Aerospace Workers ("IAM"), filed a grievance on plaintiff's behalf protesting his discharge. After defendant denied plaintiff's grievance pursuant to the

Collective Bargaining Agreement between the parties, the matter proceeded to the System Board of Adjustment (the "Board") for a hearing and a final and binding determination.

Meanwhile, on June 3, 1998, the Department of Economic Security awarded plaintiff unemployment benefits. Plaintiff alleges that defendant was unable to produce a statement from Mueller or obtain his testimony on appeal of these proceedings because, at the time, Mueller had been terminated from Northwest Airlines and could not get his cooperation. However, on October 13, 1998, approximately seven months prior to the Board's hearing on plaintiff's termination grievance, Mueller was notified through his union that his termination was reduced to a demotion to mechanic for the next 18 months.

On May 11, 1999, the Board, consisting of one Northwest representative, one union representative, and a neutral member selected by both parties, held a hearing on plaintiff's termination grievance. Plaintiff was represented by Tom Pederson, Arbitration & Education Director for the IAM. The parties examined and cross-examined four witnesses, introduced one joint exhibit and sixteen separate exhibits.

On June 11, 1999, after the grievance hearing but before the Board issued its decision, defendant notified Mueller's union that his demotion period was reduced from April 14, 2000 to June 11, 1999 with certain conditions.

On October 12, 1999, the Board denied plaintiff's grievance in a 2-1 decision. In sustaining plaintiff's discharge, the Board found that "Mechanic Mueller, who testified pursuant to a subpoena, provided credible and consistent testimony about his observations and dealings with the Grievant when he had encountered the Grievant at

Building C during the early morning of Sunday, April 19, 1998 near the loading dock." (Complaint, Exh. 7, p. 9.) The Board also credited the testimony of Paul Miller, Manager of Shop Maintenance, who testified that plaintiff had kept the key for the toolbox without any justification until the Q&A session on April 22, 1998. *Id.* at 10.

The Board further found that, although plaintiff denied attempting to remove the toolbox and claimed that he was only removing his own tools, the record revealed, according to plaintiff's own testimony, that plaintiff did not inform any supervisor about his planned action during working time and did not obtain a gate pass to authorize the removal of the items from company property even though he knew the requirement to have a gate pass. *Id.* at 10-11 (*citing* to Transcript at 117-18).[1] On this record, the Board concluded that defendant proved by clear and convincing evidence that plaintiff violated the rules of conduct noted in the April 29, 1998 termination letter and that plaintiff's discharge was for just cause.

On May 12, 2000, plaintiff received a shipment from defendant that not only contained his personal tools, but additionally contained the original Gate Pass

---

[1] At the arbitration hearing, plaintiff testified that he did not have a gate pass on the date in question:

> Q: Now, you understand that you have to have a gate pass to remove property off—remove property, tools, whatever off the property, correct?
>
> A: Yes.
>
> Q: You didn't have a gate pass to move those tools on this date, did you?
>
> A: Yeah, that's true. Yeah, I didn't have a pass.

authorization dated April 19, 1998 with the words, "haha, haha, haha!!!" written on the back. Complaint, Exh. 10-11.

Plaintiff now contends that the Court must review and vacate the arbitration award because defendant engaged in fraud and corruption in obtaining the arbitration award. Specifically, plaintiff alleges that defendant deliberately and maliciously withheld evidence from the arbitration hearing, the Gate Pass. Plaintiff further alleges that defendant coerced and induced Mueller to give false testimony against plaintiff at the arbitration hearing as evidenced by Mueller's reinstatement prior to the arbitration hearing and the cancellation of his demotion period after the hearing.

## ANALYSIS

### I. Standard of Review

In considering defendant's motion to dismiss, the factual allegations set forth in plaintiff's complaint are assumed to be true, and the Court will draw all reasonable inferences in favor of plaintiff. *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). The issue before the Court is not whether plaintiff will ultimately prevail at trial, but rather whether plaintiff is entitled to proceed with his claims. *See, e.g., Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). Also, where relevant, the Court may consider documents relied upon in plaintiff's complaint and of undisputed authenticity, even

though they are not physically attached to the pleading. *See, e.g.*, *Vizenor v. Babbit*, 927 F. Supp. 1193, 1198 (D. Minn. 1996).[2]

## II. Judicial Review under the RLA

The RLA was enacted by Congress "to promote the stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines Inc. v. Norris,* 512 U.S. 246, 252 (1994); *Union Pacific R.R. Co. v. Price,* 360 U.S. 601, 609 (1959) (purpose of the RLA is "to provide a framework for peaceful settlements of labor disputes between carriers and their employees"). In 1936, the RLA was extended to cover collective bargaining in the airline industry. 45 U.S.C. §§ 181-88. In order to secure the prompt, orderly and final settlement of "minor disputes," that is, disputes over the interpretation or application of a collective bargaining agreement, *see* 45 U.S.C. § 153 First (i), the RLA provides that Adjustment Boards shall have the primary and exclusive jurisdiction to adjudicate such claims. 45 U.S.C. § 184; *Sheehan,* 439 U.S. at 94 ("Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts."); *Steffens v. Brotherhood of Railway, Airline and Steamship Clerks,* 797 F.2d 442, 447 (7th Cir. 1986) ("Arbitration is not a contractual remedy under the RLA but the exclusive mechanism by

---

[2] Defendant's attachment of the transcript of the arbitration hearing does not require the Court to convert defendant's motion to dismiss to a motion for summary judgment. A court may take judicial notice of the transcript as a public record and may rely on that record in determining a motion to dismiss. 5A Wright & Miller, *Federal Practice and Procedure* § 1357 (explaining that "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered in determining a Rule 12(b)(6) motion); *Locicero v. Leslie*, 948 F. Supp. 10, 12 (D. Mass. 1996) (taking judicial notice of the transcript from a settlement hearing on motion to dismiss).

which an employee's claim that his employer has breached the collective bargaining agreement is adjudicated.").

Because of the strong interest in achieving finality to arbitration determinations, judicial review of Board decisions is narrow and highly deferential. The Supreme Court has repeatedly stated that review under the RLA is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan,* 439 U.S. 89, 91 (1978); *Atchison, Topeka and Santa Fe Railway Co. v. Buell,* 480 U.S. 557, 563 (1987). Under § 153 First (q), there are only three grounds upon which an aggrieved party may ask a court to review an arbitration award:

1) failure of the division to comply with the requirements of the RLA;

2) failure of the order to conform or to confine itself to matters within the scope of the division's jurisdiction; or

3) fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). Accordingly, to withstand defendant's motion to dismiss, plaintiff's complaint must allege facts that assert at least one of the above-mentioned grounds for judicial review. *Sheehan,* 439 U.S. at 93 ("Only upon one or more of these bases may a court set aside an order of the Adjustment Board.").

There is no dispute that plaintiff's allegations arise, if at all, under the third prong of § 153 First (q). In paragraphs 25 and 26 of the complaint, plaintiff alleges that defendant committed fraud in obtaining a favorable award from the Adjustment Board by 1) withholding plaintiff's gate pass; and 2) inducing Mueller to give false testimony against plaintiff.

Even a cursory review of § 153 First (q) reveals the fatal defect in plaintiff's complaint. To obtain judicial review under the third prong of § 153 First (q), the statute requires, by its express terms, that the alleged fraud be committed "**by a member of the division making the order**." Emphasis added. Here, plaintiff alleges only that Northwest Airlines, plaintiff's former employer, committed the fraud. Thus, even accepting plaintiff's allegations against defendant as true, such allegations do not provide a basis for judicial relief under the RLA. Numerous court decisions support this conclusion. *DeClara v. Metropolitan Transp. Auth.*, 748 F. Supp. 92, 95 (S.D.N.Y. 1990) (no jurisdiction over plaintiff's claim because he alleges claims against other defendants rather than by a member of the Arbitration Board under 153 First (q)); *Fine v. CSX Transp. Inc.*, No. 99-1645, 2000 U.S. App. LEXIS 21529, at *7 (6th Cir. Aug. 18, 2000) (unpublished decision) ("fraud by a party is not an exception to the finality accorded an arbitration decision"); *Podlasek v. Grand Trunk W R.R. Co.*, No. 90 C 4109, 1990 U.S. Dist. LEXIS 17501, at *6 (N.D. Ill. Dec. 14, 1990) (unpublished decision); *Holmes v. National R.R. Passenger Corp.*, No. 94-7723, 1995 U.S. Dist. LEXIS 7630, at *8 (E.D. Penn. June 2, 1995) (unpublished decision); *Steffens v. Brotherhood of Railway Airline and Steamship Clerks,* 797 F.2d 442, 448 (7th Cir. 1986) (noting that the statute requires an allegation of fraud and corruption "by a member of the division making the order," and plaintiff's corruption allegation is only against the union and the employer).

In *Podlasek*, the plaintiff claimed, as plaintiff does here, that his employer hid essential facts from the Board. 1990 U.S. Dist. LEXIS 17501 at *6. The court granted defendant's motion to dismiss because plaintiff's allegation of fraud against his employer

was not a basis for judicial review under § 153 First (q). *Id.* Specifically, the court stated:

> [T]o satisfy the requirements of 153 first (q), the alleged fraud must be committed "by a member of the division making the order." Fraud on the part of the employer does not satisfy this requirement, and therefore, the plaintiff's allegation, even if adequately supported, could not provide a basis for judicial relief.

*Id.* Likewise, in *Holmes,* the plaintiff alleged that a co-worker who testified against plaintiff before the hearing examiner was coerced into making false statements against plaintiff by plaintiff's employer. 1995 U.S. Dist. LEXIS 7630 at *7. As in *Podlasek*, the court rejected plaintiff's claim on the basis that her allegations failed to satisfy the statutory language of § 153 First (q):

> Section 153 clearly states that the fraud involved must be a fraud "by a member of the division making the order." This can only mean fraud by a member of the Board itself. The statute and the established law are clear on this point. There is no such allegation in this case, and therefore, plaintiff's case must be dismissed.

*Id.* at *8.

These decisions support the plain language of § 153 First (q) and indeed compel the conclusion that plaintiff's fraud allegations against defendant is not a basis for judicial review under the statute. Plaintiff's reliance on *Brock v. Republic Airlines, Inc.*, 776 F.2d 523 (5th Cir. 1985), does not dictate a different result. In *Brock*, plaintiff brought a hybrid claim of breach of contract and breach of duty of fair representation against his employer and union under the RLA. *Id.* at 524. Plaintiff also alleged a conspiracy between the defendants to deprive plaintiff of benefits due under the collective bargaining agreement. *Id.* The district court dismissed the action on the basis

that plaintiff failed to file his claims within the six-month statute of limitations period borrowed from section 10(b) of the National Labor Relations Act. *Id.* at 525. On appeal, the Fifth Circuit affirmed the district court on the breach of contract and duty of fair representation claims, concluding that they were barred by the six-month statute of limitation period. *Id.* at 526. The court reversed on the conspiracy claim, however. *Id.* The Court construed plaintiff's conspiracy claim as one based on allegations of fraud and corruption under § 153 First (q) and was thus controlled by the two-year limitations period set forth under 45 U.S.C. § 153 First (r). *Id.*

Although *Brock*, which is primarily a statute of limitations case, can be read to implicitly hold that judicial review under the third prong of § 153 First (q) is not limited to fraud claims against members of the board, a review of cases decided since *Brock* reveals that this portion of *Brock* has been called into question. In *Steffens v. Brotherhood of Railway, Airline and Steamship Clerks,* 797 F.2d 442 (7th Cir. 1986), the Seventh Circuit expressly declined to follow *Brock* in applying the two-year statute of limitations under § 153 First (r) on the basis that a complaint alleging corruption between the plaintiff's union and his employer "ignores the clear language of the jurisdictional statute, 45 U.S.C. § 153 first (q)." *Id.* at 448. In *Trial v. Atchison, Topeka & Santa Fe Railway Co.,* 896 F.2d 120, 125-26 (5th Cir. 1990), the Fifth Circuit interpreted the allegations made in *Brock* to have been against an Adjustment Board member: "In this case, the fraud that the appellants allege was allegedly committed by Santa Fe [appellant's employer], not by an Adjustment Board member. Therefore, the appellants'

claims of fraud fall entirely outside the parameters of *Brock*, and the two-year statute of limitations does not apply." *Id.* at 125-26.

On this record, the Court finds that plaintiff's reliance on *Brock* is misplaced. Moreover, as the plain language of § 153 First (q) and the overwhelming majority of decisions make clear, plaintiff's fraud allegations against defendant do not fall within one of the statutorily-authorized grounds for judicial review under § 153 First (q).

## III. Public Policy Exception

Plaintiff next urges the Court to review and vacate the arbitration award on public policy grounds. In *Union Pacific R.R. Co. v. United Transp. Union,* 3 F.3d 255 (8th Cir. 1993), the Eighth Circuit held that federal courts possess authority to vacate arbitration awards under the RLA on public policy grounds "when those awards violate well-defined and dominant public policies." *Id.* at 260. In recognizing this exception, however, the court stressed that "[o]ur conclusion that arbitration awards under the RLA are subject to public policy does not mean . . . that courts are free to overturn any award with which they disagree." *Id.* Rather, "courts invoking public policy to overturn arbitration awards must be careful to rely on public policies that are 'well defined and dominant' and that can be 'ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* at 260-61 (quoting *W.R. Grace and Co. v. Local 759,* 461 U.S. 757, 766 (1983)).

In this case, plaintiff argues that the Court should overturn the Board's determination because of the public policy against fraud. According to plaintiff, failure

to review and vacate the Board's determination on this basis reaches an absurd interpretation of the statute and is contrary to the purposes of the RLA.

At the outset, the Court is mindful of the fact that "[a] court must exercise extreme caution in declaring an arbitration award violative of public policy." *Schmidt v. Republic Airlines,* 630 F. Supp. 1303, 1306 (D. Minn. 1986); *Eastern Assoc. Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 63 (2000) ("[T]he public policy exception is narrow and must satisfy the principles set forth in *W.R. Grace* and *Misco*."). In this case, plaintiff fails to support his argument "by reference to the laws and legal precedents" as required under *Union Pacific* but rather states, in conclusory fashion, that the public policy against fraud and corruption is clearly well defined and dominant in our laws. *Union Pacific*, 3 F.3d at 261-62 (discussing numerous and comprehensive federal railroad administrative regulations prohibiting railroad employees from using or possessing alcohol or drugs while on duty); *Eastern Coal,* 531 U.S. at 63-64 (citing statutes and regulations to demonstrate public policy against reinstatement of workers who use drugs).

Moreover, the Court is particularly reluctant, absent a compelling showing, to vacate an award based on plaintiff's fraud allegations against his employer when doing so would essentially re-write the express terms of § 153 First (q). Congress chose its words carefully when it enacted § 153 First (q) and confined judicial review to situations of "fraud or corruption **by a member of the division making the order**." Although Congress could have extended judicial review to fraud or corruption generally, it did not. *Eastern Coal*, 531 U.S. at 67 ("We hesitate to infer a public policy in [the Transportation

Act and DOT regulations] that goes beyond the careful and detailed scheme Congress and the Secretary have created."). On this record, plaintiff has not made a sufficient showing to vacate the award on public policy grounds.

Thus, for all the foregoing reasons, the Court grants defendant's motion to dismiss.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Northwest Airlines Inc.'s motion to dismiss [Docket No. 5] is **GRANTED**;

2. Plaintiff's complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

3. Defendant Northwest Airlines Inc.'s motion for sanctions [Docket No. 6] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 21, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500